UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

BRIAN K. BREWER and SUZANNE L.
BREWER,

No. 2:08-CV-01211-FCD-DAD

        Plaintiffs,

    v.                                MEMORANDUM AND ORDER

INDYMAC BANK, RESIDENTIAL
MORTGAGE CAPITAL, JAMES
CHAPMAN,

        Defendants.


----oo0oo----

    On August 29, 2008, plaintiffs Brian K. Brewer and Suzanne

L. Brewer (collectively "plaintiffs") filed their first amended

complaint ("FAC") for damages and injunctive relief against

defendants Indymac Bank ("Indymac"), Residential Mortgage Capital

("RMC"), and James Chapman ("Chapman").  This matter is before

the court on defendants RMC and Chapman's (collectively

"defendants") motions to dismiss plaintiffs' FAC for failure to

state a claim pursuant to Federal Rule of Civil Procedure

12(b)(6)[1] and for failure to join a necessary party pursuant to Rule 12(b)(7) and Rule 19. Plaintiffs oppose the motions. For the reasons set forth below, defendants' motion to dismiss is GRANTED in part and DENIED in part.[2] In the alternative, defendants file a motion for a more definite statement pursuant to Rule 12(e) and a motion to strike pursuant to Rule 12(f). For the reasons set forth below, defendants' motion for a more definite statement and motion to strike are DENIED.

**BACKGROUND**

This is a mortgage fraud action in which plaintiffs allege that Indymac, RMC, and Chapman failed to disclose the material terms of plaintiffs' loans, unlawfully obtained higher loan origination fees from plaintiffs, and transferred plaintiffs' loans through a sham transaction through which RMC unlawfully made a "secret profit." (First Am. Compl. ("FAC"), filed Aug. 29, 2008, ¶¶ 34-39.) Plaintiffs allege that on or about May 17, 2005, plaintiffs entered into a consumer credit transaction with RMC whereby plaintiffs obtained two loans for the financing of residential property. (FAC ¶ 14.) Plaintiffs allege that upon consummation of the loans, RMC was required to provide plaintiffs with certain financial disclosures, specifically the "amount financed," the "finance charges," and notice of an optional three-day rescission period, pursuant to the Truth in Lending Act, 15 U.S.C. § 1601, et seq. ("TILA"). (Id. ¶¶ 15-18.)

_____

[1]    All further references to a "Rule" are to the Federal Rules of Civil Procedure.

[2]    The court does not address the sufficiency of plaintiffs' claims against defendant Indymac.

2

Plaintiffs allege, however, that RMC inaccurately reported the amount financed, collected finance charges that were not disclosed to plaintiffs, and failed to provide plaintiffs with dated copies of their notice of right to rescind the loans, all in violation of TILA.  (<u>Id.</u> ¶¶ 29-30, 33-36).

Plaintiffs further allege that RMC devised a scheme with Indymac whereby RMC transferred plaintiffs' loans to Indymac and received a "secret profit" in direct contravention of federal law and fiduciary duties owed to plaintiffs.  (<u>Id.</u> ¶¶ 36-40.) According to plaintiffs, RMC acted as plaintiffs' mortgage broker and thus owed plaintiffs a fiduciary duty.  (<u>Id.</u> ¶¶ 37-40). Plaintiffs allege that in securing plaintiffs' loans, RMC and Indymac engaged in a "table funded" transaction[3] designed to circumvent the Federal Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, et seq. ("RESPA"). (<u>Id.</u> ¶ 38.)  Plaintiffs further allege that although the loans were table funded by RMC, RMC attempted to secure "holder in due course" status by disguising the table funded transaction as a secondary market transaction. (<u>Id.</u>)  Through this course of conduct, defendants purposefully attempted to thwart the provisions of RESPA designed to protect debtor consumers.  (<u>Id.</u>)  Plaintiffs allege that as payment for securing plaintiffs' loans and in direct violation of RESPA, RMC received a secret profit from Indymac that RMC failed to disclose
/////

---

[3]    "*Table funding* means a settlement at which a loan is funded by a contemporaneous advance of loan funds and an assignment of the loan to the person advancing the funds.  A table funded transaction is not a secondary market transaction." 24 C.F.R. § 3500.2 (2009) (emphasis in original).

to plaintiffs, despite RMC's fiduciary duty to do so. (<u>Id.</u> ¶¶ 36-37.)

Additionally, plaintiffs allege that they contacted Indymac regarding their right to rescind the loan agreements, yet Indymac did not comply with the provisions of TILA permitting plaintiffs to rescind the loans. (<u>Id.</u> ¶¶ 24-28.) By letter dated April 13, 2008, plaintiffs notified Indymac that they were provided with a deficient notice of right to rescind by RMC. (<u>Id.</u> ¶ 24.) At this time, plaintiffs informed Indymac that they preferred to settle the matter with Indymac rather than rescind the loans. (<u>Id.</u>) Plaintiffs did not hear back from Indymac, and on May 7, 2008, plaintiffs, through counsel, notified Indymac that due to the defect in the notice of right to rescind provided by RMC, plaintiffs were electing to rescind the loans. (<u>Id.</u> ¶ 25.) As required by TILA, plaintiffs tendered the real property to Indymac, but Indymac only responded with a "rescission implementation agreement" as to the first loan, and failed to rescind the second loan. (<u>Id.</u> ¶¶ 25-28.) Although the rescission implementation agreement provides that Indymac is the lender, plaintiffs instead assert that an unascertainable third party currently holds the loans. (<u>Id.</u> ¶ 28.)

Due to the foregoing, plaintiffs allege that they are entitled to rescind the loan agreements and obtain damages for defendants' unlawful and inequitable conduct.

**STANDARDS**

**I.    Motion to Dismiss for Failure to State a Claim**

On a motion to dismiss, the allegations of the complaint must be accepted as true. <u>Cruz v. Beto</u>, 405 U.S. 319, 322

(1972).  The court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged.  See id.

Nevertheless, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged."  Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).  Moreover, the court "need not assume the truth of legal conclusions cast in the form of factual allegations."  United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

Ultimately, the court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007).  Only where a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible," is the complaint properly dismissed.  Id.  "[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (quoting Hudson v. King & Spalding, 467 U.S. 69, 73 (1984)).

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201.

See <u>Mir v. Little Co. Of Mary Hospital</u>, 844 F.2d 646, 649 (9th

Cir. 1988); <u>Isuzu Motors Ltd. v. Consumers Union of United

States, Inc.</u>, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

**II.   Motion to Dismiss for Failure to Join Necessary and
       Indispensable Parties**

Rule 12(b)(7) authorizes a motion to dismiss the action for

failure to join a necessary party in accordance with Rule 19.

Rule 12(b)(7) permits a motion to dismiss where there is an

absent person without whom complete relief cannot be granted or

whose interest in the dispute is such that to proceed in that

person's absence might prejudice that individual or entity or the

parties already before the court.   <u>In re Republic of Philippines</u>,

309 F.3d 1143, 1152 (9th Cir. 2002).   The analysis under Rule 19

generally proceeds in two steps: 1) the court asks whether a

party is necessary to the suit; and 2) if so, and that party

cannot be joined, the court must assess whether the party is

"indispensable" so that "in equity and good conscience" the suit

should be dismissed.   <u>Shermoen v. U.S.</u>, 982 F.2d 1312, 1317 (9th

Cir. 1992).   "In determining whether a party is 'necessary' under

Rule 19(a), the court must consider whether 'complete relief' can

be accorded among the existing parties, and whether the absent

party has a 'legally protected interest' in the subject of the

suit."   <u>Id.</u> (quoting Rule 19(a)).   The inquiry is fact specific,

and the moving party "has the burden of persuasion in arguing for

dismissal."   <u>Id.</u>

**III. Motion for a More Definite Statement**

A motion for a more definite statement should not be granted

unless a pleading is "so vague or ambiguous that a party cannot

6

reasonably be required to frame a responsive pleading." Rule
12(e). This liberal standard is consistent with Rule 8(a)(2)
which allows pleadings that contain a "short and plain statement
of the claim." The Federal Rules of Civil Procedure anticipate
that the parties will familiarize themselves with the claims and
ultimate facts through the discovery process. See Famolare, Inc.
v. Edison Brothers Stores, Inc., 525 F. Supp. 940, 949 (E.D. Cal.
1981). Indeed, "where the information sought by the moving party
is available and/or properly sought through discovery, the motion
should be denied." Id.

**IV.  Motion to Strike**

Rule 12(f) enables the court by motion by a party or by its
own initiative to "order stricken from any pleading . . . any
redundant, immaterial, impertinent, or scandalous matter." The
function of a 12(f) motion is to avoid the time and expense of
litigating spurious issues. Fantasy, Inc. v. Fogerty, 984 F.2d
1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517
(1994); see also 5A Charles A. Wright & Arthur R. Miller, Federal
Practice and Procedure § 1380 (2d ed. 1990).

Rule 12(f) motions are generally viewed with disfavor and
not ordinarily granted because they are often used to delay and
because of the limited importance of the pleadings in federal
practice. Bureerong v. Uvawas, 922 F. Supp. 1450, 1478 (C.D.
Cal. 1996). A motion to strike should not be granted unless it
is absolutely clear that the matter to be stricken could have no
possible bearing on the litigation. Lilley v. Charren, 936 F.
Supp. 708, 713 (N.D. Cal. 1996).

/////

7

**ANALYSIS**

## I.  Motion to Dismiss

Defendants seek to dismiss all claims alleged by plaintiffs against RMC and Chapman.  Specifically, plaintiffs' Second, Fifth, Sixth, Seventh, Tenth, Eleventh, Twelfth, and Thirteenth Claims for Relief.

### A.  Plaintiffs' Second Claim for Relief

Plaintiffs' Second Claim for Relief alleges that defendants violated TILA by 1) failing to provide plaintiffs with valid copies of the notice of right to rescind, and 2) inaccurately reporting finance charges, the amount financed, and the annual percentage rate in the required financial disclosures for the first loan agreement.  (FAC ¶¶ 63-64.)  Plaintiffs seek rescission of the loan agreements, actual and statutory damages, and attorney fees.  Defendants move to dismiss plaintiffs' TILA claim on the basis that it is time barred.

The declared purpose of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a).  Consequently, TILA mandates that creditors provide borrowers with clear and accurate disclosures of borrowers' rights, finance charges, the amount financed, and the annual percentage rate.  <u>See, e.g.</u>, U.S.C. §§ 1632, 1635, 1638.

15 U.S.C. § 1635(a) provides that in the case of a consumer credit transaction in which the creditor acquires a security

interest in property to be used as the principal residence of the obligor, the obligor "shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information or rescission forms."  An obligor who exercises their right to rescind "is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon rescission."  Id. at § 1635(b).  However, where the required forms and disclosures have not been delivered to the obligor, 15 U.S.C. § 1635(f) provides that "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first."  The expiration of the three year statute of repose deprives a court of subject matter jurisdiction to order rescission.  Miguel v. Country Funding Corp., 309 F.3d 1161, 1164 (9th Cir. 2002).

To exercise the right to rescind, the obligor must "notify the creditor of the rescission by mail, telegram, or other means of written communication."  12 C.F.R. § 226.23(a)(2).  Notice is deemed effective "when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business."  Id.  Within 20 days of receiving notice of rescission, "the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction."  Id.  The borrower's right to

rescind applies equally against the original creditor and subsequent assignees.  15 U.S.C. § 1641(c).

15 U.S.C. § 1635(g) provides, "In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind."  15 U.S.C. § 1640(a) allows private causes of action for monetary damages.  However, 15 U.S.C. § 1640(e) establishes a limitation period on damages claims, providing that "[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."  Where a creditor refuses to cancel a loan after receiving timely notice of rescission, the creditor violates TILA.  Miguel, 309 F.3d at 1165.  Pursuant to 15 U.S.C. § 1640(e), the obligor has one year from the date of refusal to file suit for damages arising out of the failure to rescind.  Id. Additionally, a creditor violates TILA where they make inaccurate disclosures, and an obligor has one year from each of the lender's inaccurate disclosures to file suit.  Hubbard v. Fidelity Federal Bank, 91 F.3d 75, 79 (9th Cir. 1996).

### 1.  Recission[4]

Plaintiffs contend that due to defendants' TILA violations, they are entitled to 15 U.S.C. § 1635(f)'s extended three-year right of rescission.  Assuming *arguendo* that plaintiffs are

---

[4]     It is unclear whether plaintiffs seek rescission from defendants through this suit.  However, as set forth *infra*, based upon the facts alleged in the FAC, such a claim is time barred.

entitled to the three-year statute of limitations, plaintiffs'
right of rescission expired on or about May 17, 2008, three years
from the date of consummation of the loan agreements.

According to 12 C.F.R. § 226.23(a)(2), in order to exercise
the right of rescission the obligor must "notify the creditor of
the rescission by mail, telegram, or other means of written
communication," and notice is deemed effective when mailed.  <u>See</u>
<u>also</u> <u>Toscano v. Ameriquest Mortg. Co.</u>, WL 3125023 (E.D. Cal.
2007) (stating that while the law is not entirely settled, "the
consensus is that 'the filing of a lawsuit can be sufficient
written notice of rescission under TILA so long as the complaint
seeks rescission'").  Plaintiffs allegedly provided notice to
Indymac of their intention to rescind on May 7, 2008, within
three years of the date of loan consummation.  However,
plaintiffs filed suit after May 17, 2008, and did not notify RMC
or Chapman of their intention to rescind until they filed suit on
May 30, 2008.  <u>See</u> <u>Miguel</u>, 309 F.3d at 1164-65 (holding that
obligor's right to rescind expired where obligor did not rescind
against the proper party within three years of loan
consummation).  Thus, plaintiffs' claim for rescission as to
defendants is time barred.

**2.  Damages**

Plaintiffs argue that they should be allotted an additional
year in which to file suit for damages after expiration of the
three-year period afforded by 15 U.S.C. § 1635(f).  15 U.S.C. §
1640(e) permits a borrower to file suit within one year of a
creditor's wrongful refusal to honor a borrower's right to
rescind.  However, as set forth above, plaintiffs do not allege

11

that they sought rescission from defendants within the statutory period, and thus plaintiffs cannot claim that defendants unjustifiably failed to cancel their loans. See Miquel, 309 F.3d at 1165 (holding that creditor could not be held liable for failing to cancel obligor's loan under 15 U.S.C. § 1640(e) where rescission was not effected during the three-year statutory period). While plaintiffs allege that Indymac received notice of rescission within the three-year statutory period and refused to cancel plaintiffs' second loan, plaintiffs have not cited any authority for the principle that notice to an assignee should suffice for notice to the original creditor.

With respect to their claims for inaccurate disclosures, plaintiffs argue that Indymac's failure to cancel plaintiffs' loans extends the statute of limitations for all alleged TILA violations.[5] However, the Ninth Circuit has held that inaccurate disclosures are deemed to occur at the date of consummation of the loan, and thus the statutory period "runs from the date of consummation of the transaction." King v. California, 784 F.2d 910, 915. Accepting plaintiffs' allegations regarding defendants' inaccurate disclosures as true, plaintiffs had one year to bring a damages claim under 15 U.S.C. § 1640(e) for the alleged disclosures. See 15 U.S.C. § 1640(e); Hubbard, 91 F.3d at 79. Plaintiffs executed the loan agreements on or about May 17, 2005, and filed this suit on May 30, 2008. The one-year time limitation on plaintiffs' damages claim for inaccurate

/////

---

[5]     Plaintiffs fail to provide any authority to support this proposition.

12

disclosures expired on May 17, 2006, well before the filing of plaintiffs' complaint.

Accordingly, defendants' motion to dismiss plaintiffs' Second Claim for Relief is GRANTED. However, leave to amend should be granted "unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986). To the extent plaintiffs can allege sufficient facts regarding timely notice to defendants of their intention to rescind, plaintiffs are granted leave to amend.

## B. Plaintiffs' Fifth Claim for Relief

Plaintiffs' Fifth Claim for Relief alleges that defendants violated RESPA by receiving undisclosed fees or kickbacks from Indymac pursuant to an agreement through which defendants fraudulently transferred plaintiffs' loans to Indymac. Defendants seek to dismiss plaintiffs' RESPA claim for relief on the basis that defendants validly conveyed plaintiffs' loans to Indymac through means of a secondary market transaction, such that RESPA no longer provides protection for plaintiffs' loans. Moreover, defendants seek to dismiss plaintiffs' RESPA claim for relief on the basis that the claim for relief is time barred.

### 1. Conveyance

Congress enacted the Real Estate Settlement Procedures Act ("RESPA") to shield home buyers "from unnecessarily high settlement charges by certain abusive practices." 12 U.S.C. § 2601(a). 12 U.S.C. § 2607(a) provides, "No person shall give and no person shall accept any fee, kickback, or thing of value

pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." 12 U.S.C. § 2607(b) further provides, "No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed."

12 U.S.C. § 2607(c)(2) provides a safe harbor, however, stating in relevant part that "[n]othing in this section shall be construed as prohibiting . . . (2) the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed." Further, bona fide secondary market transactions, in which closed loans are purchased by investors, are exempt from RESPA. 24 C.F.R. § 3500.5(b)(7). However, "table-funded" transactions are not considered secondary market transactions. 24 C.F.R. § 3500.2; 24 C.F.R. § 3500.5(b)(7). "Table funding" is defined as "a settlement at which a loan is funded by a contemporaneous advance of loan funds and an assignment of the loan to the person advancing the funds." 24 C.F.R. § 3500.2. "In determining what constitutes a bona fide transfer, HUD will consider the real source of funding and the real interest of the funding lender . . . [T]he first assignment of such loan or contract to a lender" is not a secondary market transaction. 24 C.F.R. § 3500.5(b)(7).

Compensation in the form of yield spread premiums[6] ("YSP")
is not per se illegal or legal. <u>Geraci v. Homestreet Bank</u>, 347
F.3d 749, 751 (9th Cir. 2003); <u>see</u> <u>also</u> Department of Housing and
Urban Development ("HUD") 2001-1 Policy Statement, 66 Fed. Reg.
at 53054.   However, "HUD currently requires the disclosure of
yield spread premiums" because "borrowers should be afforded a
meaningful opportunity to select the most appropriate product and
determine what price they are willing to pay for the loan."   66
Fed. Reg. at 53056.

Construing the complaint liberally, plaintiffs have
sufficiently alleged that defendants and Indymac entered into a
table-funded transaction through which defendants, in violation
of RESPA, unlawfully acquired fees or kickbacks which were not
disclosed to plaintiffs.   Plaintiffs allege that the quick
transfer of plaintiffs' loans to Indymac is evidence that the
loans were table funded by a contemporaneous advance of loan
funds from Indymac, and that Indymac served as the real source of
funding for the loans.   Thus, the protections of RESPA apply to
plaintiffs' loans.   <u>See</u> 24 C.F.R. § 3500.2; 24 C.F.R. §

---

[6]     "A yield spread premium, or 'YSP,' is a lump sum paid
by a lender to a broker at closing when the loan originated by
the broker bears an above-par interest rate."   <u>Schuetz v. Banc</u>
<u>One Mortgage</u>, 292 F.3d 1004, 1007 (9th Cir. 2002).   Lenders
frequently quote par interest rates to brokers several times per
day, and where the broker acquires a loan with an above-par rate
for a borrower, the broker usually receives the YSP, or the
"difference between the rate reflected in the rate quote and the
rate of the loan entered into by the borrower," as compensation
from the lender, although the cost is "ultimately paid by the
consumer."   <u>Id.</u>   In some cases, "less scrupulous brokers and
lenders use yield spread premiums as a way to enhance the
profitability of mortgage transactions without offering the
borrower lower up front fees."   Department of Housing and Urban
Development ("HUD") 2001-1 Policy Statement, 66 Fed. Reg. 53052,
53054 (Oct. 18, 2001).

3500.5(b)(7). Likewise, plaintiffs have sufficiently alleged
that defendants received illegal kickbacks or fees from Indymac,
such that defendants violated RESPA. 12 U.S.C. § 2607(a)-(b).

Defendants assert that they did not act as plaintiffs'
mortgage broker, such that they did not owe plaintiffs a duty of
disclosure regarding any fees acquired from Indymac. However, on
a motion to dismiss, plaintiffs' allegations must be accepted as
true. Although the HUD-1 Settlement Statement provides that a
loan origination fee was paid to Dan Brown Mortgage, who
defendants contend was plaintiffs' mortgage broker, plaintiffs
allege that defendants were also acting as plaintiffs' mortgage
broker in originating the loans and failed to disclose the YSP in
violation of RESPA's disclosure requirements. <u>See</u> 24 C.F.R. §
3500, App. A, § L.

### 2. Statute of Limitations

The statute of limitations for bringing an action for
violation of 12 U.S.C. § 2607 is one year. 12 U.S.C. § 2614.
The doctrine of equitable tolling "focuses on excusable delay by
the plaintiff," <u>Johnson v. Henderson</u>, 314 F.3d 409, 414 (9th Cir.
2002), and centers upon whether "a reasonable plaintiff would . .
. have known of the possible existence of a possible claim within
the limitations period." <u>Santa Maria</u>, 202 F.3d at 1178. Where
equitable tolling is at issue, it is rarely appropriate to grant
a Rule 12(b)(6) motion to dismiss. <u>Huynh v. Chase Manhattan
Bank</u>, 465 F.3d 992, 1003-04 (9th Cir. 2006).

The Ninth Circuit has not decided whether the doctrine of
equitable tolling may, in appropriate circumstances, suspend the
limitations period until the borrower discovers or had reasonable

16

opportunity to discover the violations that form the basis of plaintiffs' RESPA action.[7]  However, absent a clear indication to the contrary, equitable tolling should be read into every federal statute.  See Holmberg v. Armbrecht, 327 U.S. 396-97 (1946); see also Lawyers Title Ins. Corporation v. Dearborn Title Corp., 118 F.3d 1157, 1166-67 (7th Cir. 1997) (holding that RESPA actions are subject to equitable tolling because only in the rarest circumstances are statutes considered jurisdictional) (citing King, 784 F.2d at 914-15); but see Hardin v. City Title & Escrow Co., 797 F.2d 1037, 1040-41 (D.C. Cir. 1986) (holding that RESPA actions are not subject to equitable tolling because the statute of limitation, found in the same section that confers jurisdiction on the federal courts, is jurisdictional).

    Similar to RESPA's statute of limitation, 12 U.S.C. § 2614, TILA's statute of limitation, 15 U.S.C. § 1640(e), confers jurisdiction upon the district court and imposes a one-year limitation for bringing damages actions.  The Ninth Circuit has held that despite its jurisdictional tone, TILA violations are subject to equitable tolling because "an inflexible rule that bars suit one year after consummation is inconsistent with legislative intent."  King, 784 F.2d at 914.  In light of King's interpretation of a nearly identical statute, the court concludes

_____

[7]    Two district courts in the Ninth Circuit have held that equitable tolling is available with respect to RESPA actions. Kay v. Wells Fargo & Co., N.A., 2007 U.S. Dist. WL 2141292 (N.D. Cal. July 24, 2007); Blaylock v. First Am. Title Ins. Co., 504 F. Supp. 2d 1091, 1106 (W.D. Wash. 2007).  Meanwhile, two other courts in the Ninth Circuit declined to reach the question of whether equitable tolling is available with respect to RESPA actions.  See Bloom v. Martin, 865 F. Supp. 1377, 1386-87 (N.D. Cal. 1994); Marcelos v. Dominquez, 2008 WL 1820683 (N.D. Cal. 2008)).

17

that "equitable tolling may, in appropriate circumstances, suspend the limitations period until the borrower discovers or has reasonable opportunity to discover the fraud or nondisclosures that form the basis of the" RESPA action.  <u>Id.</u> at 915; <u>see also</u> <u>Blaylock</u>, 504 F. Supp. 2d 1091.

Plaintiffs allege that upon consummation of the loans, defendants immediately transferred the loans to Indymac through a fraudulent conveyance.  Plaintiffs executed the loans on or about May 17, 2005, and filed this suit on May 30, 2008.  Since plaintiffs' loans were allegedly transferred to Indymac approximately three years before the complaint was filed, the one-year limitation for bringing an action for defendants' alleged RESPA violations has elapsed.  However, plaintiffs' contend that the doctrine of equitable tolling should extend their right to file suit because defendants and Indymac allegedly entered into their fraudulent transaction in such a manner that plaintiffs could not ascertain the nature of the transaction at the time it occurred.

Defendants assert that the statute of limitations should not be equitably tolled because defendants took no action to mislead plaintiffs and did not deprive plaintiffs of any legal rights.  However, defendants confuse equitable tolling with equitable estoppel, which requires a showing of wrongful conduct on the part of the defendant.  <u>Santa Maria</u>, 202 F.3d at 1178.  "Instead [equitable tolling] focuses on whether there was an excusable delay by the plaintiff."  <u>Id.</u>  Plaintiffs' allege that they delayed in filing suit for defendants' RESPA violations because defendants allegedly concealed the details of the fraudulent

18

transfer and the accompanying secret profit which gave rise to the RESPA claim.  As such, plaintiffs' delay in filing suit may be excusable.  Construing plaintiffs' complaint liberally and in the light most favorable to plaintiffs, plaintiffs' have alleged sufficient facts to raise an issue as to whether the one-year statute of limitation contained in 12 U.S.C. § 2614 should be equitably tolled.

Accordingly, defendants' motion to dismiss plaintiffs' Fifth Claim for Relief is DENIED.

### C.   Sixth Claim for Relief

In their Sixth Claim for Relief, plaintiffs allege that defendants, as mortgage brokers, owed plaintiffs a fiduciary duty, which defendants breached by (1) obtaining a mortgage loan with unfavorable terms, (2) not disclosing the consequences of the loan, (3) obtaining a "secret profit," and (4) not properly complying with TILA and RESPA.  Due to this alleged breach, plaintiffs seek actual and punitive damages.  Defendants seek to dismiss plaintiffs' Sixth Claim for Relief on the basis that defendants at no time served as plaintiffs' mortgage broker, and thus did not owe plaintiffs a fiduciary duty.

"The elements of a cause of action for breach of fiduciary duty are: 1) the existence of a fiduciary duty; 2) a breach of the fiduciary duty; and 3) resulting damage." Pellegrini v. Weiss, 165 Cal. App. 4th 515, 524 (2008).  A mortgage broker owes a fiduciary duty to their client.  See Cal. Civ. Code § 2079.24; Zimmer v. Nawabi, 566 F. Supp. 2d 1025 (E.D. Cal. 2008).  Under California law, a mortgage broker acts in a fiduciary capacity that "not only imposes upon him the duty of acting in the highest

19

good faith toward his principal but also precludes the agent from
obtaining any advantage over the principal in any transaction had
by virtue of his agency." Wyatt v. Union Mortgage Co., 24 Cal.
3d 773, 782 (1979) (citing Batson v. Strehlow, 68 Cal. 2d 662,
674-75 (1968)). This duty obligates brokers to "make a full and
accurate disclosure of the terms of a loan to borrowers and to
act always in the utmost good faith toward their principals."
Wyatt, 24 Cal. 3d at 782 (citing Ratray v. Scudder, 28 Cal. 2d
214, 223 (1946)). Accordingly, a broker is liable to his
principal for secret profits. Roberts v. Lomanto, 112 Cal. App.
4th 1553 (2003).

With respect to punitive damages awarded for breach of
fiduciary duty, Cal. Civ. Code § 3294 provides, in relevant part:

> In an action for the breach of an obligation not
> arising from contract, where it is proven by clear and
> convincing evidence that the defendant has been guilty
> of oppression, fraud, or malice, the plaintiff, in
> addition to the actual damages, may recover damages for
> the sake of example and by way of punishing the
> defendant.

"[A] breach of a fiduciary duty alone without malice, fraud or
oppression does not permit an award of punitive damages. The
wrongdoer must act with the intent to vex, injure, or annoy, or
with a conscious disregard of the plaintiff's rights." Lackner
v. North, 135 Cal. App. 4th 1188, 1210 (2006). "[E]ntitlement to
punitive damages is generally an issue for the trier of fact."
The Nippon Credit Bank v. 1333 North Cal. Boulevard, 86 Cal. App.
4th 486, 501 (2001).

Accepting the allegations of the complaint as true,
defendants acted as plaintiffs' mortgage broker and thus owed
plaintiffs a fiduciary duty. Plaintiffs also allege that

defendants breached their fiduciary duty, and that plaintiffs suffered harm as a proximate result of defendants' breach. Further, plaintiffs allege that by deliberately committing a breach of their fiduciary duty, defendants acted with malice, fraud, wantonness, oppression, or conscious indifference to plaintiffs' consequences. Specifically, plaintiffs allege that defendants, acting as plaintiffs' mortgage broker, conspired to charge plaintiffs higher loan origination fees and interest rates in order to obtain a "secret profit." As such, plaintiffs have sufficiently alleged that defendants intentionally and fraudulently breached fiduciary duties owed to plaintiffs.

Accordingly, defendants' motion to dismiss plaintiffs' Sixth Claim for Relief is DENIED.

**D.    Seventh and Twelfth Claims for Relief**

Plaintiffs' Seventh Claim for Relief alleges that defendants charged plaintiffs a higher interest rate on their loans through which defendants obtained a "secret profit," and that by failing to disclose this information, defendants engaged in fraud by concealment. Similarly, plaintiffs' Twelfth Claim for Relief alleges that defendants, through fraud and deceit, willfully induced plaintiffs to agree to loan terms that were disadvantageous to plaintiffs. Defendants seek to dismiss plaintiffs' fraud by concealment claim on the basis that defendants were a lender and thus did not owe plaintiffs a fiduciary duty. Additionally, defendants seek to dismiss plaintiffs' fraud and deceit claim on the basis that plaintiffs' allegations are not pled with sufficient particularity.

/////

As a general rule, the complaint need only contain a "short and plain statement" of the relevant facts. Rule 8(a). An exception exists, however, for claims of fraud and mistake. Specifically, Rule 9(b) provides, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "To avoid dismissal for inadequacy under Rule 9(b), [plaintiff's] complaint . . . need[s] to 'state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.'" Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2006) (quoting Alan Neuman Prods., Inc. v. Albright, 862 F.2d 1388, 1392 (9th Cir. 1989)). "Averments of fraud must be accompanied by "the who, what, when, where, and how' of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (citing Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)). Allegations of fraud based on information and belief generally do not satisfy the particularity requirements of Rule 9(b); however, this rule is relaxed where plaintiffs do not have knowledge of the underlying facts and the matter is within the opposing party's knowledge. Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993). "The purpose of [Rule 9(b)] is to ensure that defendants accused of the conduct specified have adequate notice of what they are alleged to have done, so that they may defend against the accusations." Concha v. London, 62 F.3d 1493, 1502 (9th Cir. 1995). "Without such specificity, defendants in these cases would be put to an unfair advantage, since at the early stages of

22

the proceedings they could do no more than generally deny any wrongdoing." Id. (citing Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). "While a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." Vess, 317 F.3d at 1103. (emphasis in original.)

Since plaintiffs' Seventh and Twelfth Claims for Relief are grounded in fraud, plaintiffs' allegations must satisfy Rule 9(b)'s heightened pleading requirement.

### 1. Fraud by Concealment

"Concealment is a species of fraud or deceit." Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC, 162 Cal. App. 4th 858, 868 (2008). The following elements must be proven to establish a fraud by concealment claim: 1) the defendant concealed or suppressed a material fact, 2) the defendant was under a duty to disclose the fact to the plaintiff, 3) the defendant intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, 4) the plaintiff was unaware of the fact and would not have acted as he did had he known of the concealed or suppressed fact, and 5) the plaintiff sustained damages as a result of the concealment or suppression of the fact. Lovejoy v. AT&T Corp., 92 Cal. App. 4th 85, 96 (2001).

Defendants seek to dismiss plaintiffs' fraud by concealment claim for relief on the basis that defendants were lenders and thus did not owe plaintiffs a fiduciary duty. However, plaintiffs' allegations must be accepted as true, and plaintiffs

23

allege that defendants held themselves out as mortgage brokers, such that defendants owed plaintiffs a fiduciary duty to act with the utmost good faith and not retain secret profits arising out of the agency relationship.  Due to this alleged fiduciary duty, defendants were required to disclose that they obtained a "secret profit" arising from plaintiffs' higher interest rates.  Further, in claiming that defendants fraudulently transferred plaintiffs' loans to Indymac in order to obtain a secret profit, that the existence of the "secret profit" detrimentally affected plaintiffs' loan terms, and that plaintiffs would not have executed the loans had they known about the "secret profit," plaintiffs' have adequately pled facts to satisfy the elements of fraud by concealment and put defendants on notice of their claim. Therefore, plaintiffs' Seventh Claim for Relief is sufficient to withstand a motion to dismiss.

### 2.    Fraud and Deceit

"[I]n an action for fraud and deceit a cause of action is stated when the facts constituting the fraud are alleged and a resulting injury is pleaded."  <u>Hartzell v. Myall</u>, 115 Cal. App. 2d 670, 680 (1953).  Under California law, 'the indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages.'"  <u>Vess</u>, 317 F.3d at 1105 (quoting <u>Hackethal v. Nat'l Cas. Co.</u>, 189 Cal. App. 3d 1102, 1111 (1987)).

Plaintiffs' Twelfth Claim for Relief is not alleged with sufficient particularity to satisfy the heightened pleading requirement of Rule 9(b).  Plaintiffs merely allege that defendants willfully deceived and caused harm to plaintiffs for

24

defendants' own financial gain. Although plaintiffs incorporate all preceding paragraphs of their complaint, plaintiffs do not identify the specific conduct that gave rise to their fraud claim. In essence, plaintiffs failed to allege the "who, what, when, where, and how" of the alleged misconduct giving rise to their fraud and deceit claim for relief. The purpose of the heightened pleading requirement of Rule 9(b) is to put defendants on adequate notice of what they are alleged to have done. However, plaintiffs allegations do not put defendants on notice of the specific conduct at issue. Therefore, plaintiffs' Twelfth Claim for Relief is not sufficient to withstand a motion to dismiss.

Accordingly, defendants' motion to dismiss plaintiffs' Seventh Claim for Relief is DENIED, and defendants' motion to dismiss plaintiffs' Twelfth Claim for Relief is GRANTED with leave to amend.

**E.    Tenth Claim for Relief**

In their Tenth Claim for Relief, plaintiffs allege that defendants engaged in unfair business practices by: 1) violating TILA and RESPA and breaching alleged fiduciary duties; 2) inducing plaintiffs to execute loans that were unfair to plaintiffs; and 3) intentionally understating the finance charges plaintiffs were compelled to pay on their loans. Defendants contend that plaintiffs' unfair business practices claim should be dismissed because plaintiffs do not have standing to assert the claim, and have not sufficiently alleged that defendants

engaged in an unfair business practice.[8]

California Business and Professions Code § 17200 provides, in relevant part, "[U]fair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." "'Because . . . section 17200 is written in the disjunctive, it establishes three varieties of unfair competition – acts or practices which are unlawful, or unfair, or fraudulent.' . . . 'A practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' or vice versa.'" <u>Lippitt v. Raymond James Fin. Servs., Inc.</u>, 340 F.3d 1033, 1043 (9th Cir. 2003) (quoting <u>Cel-Tech</u>, 20 Cal. 4th at 180). Section 17200 "'borrows' violations of other laws and treats" them as unlawful business practices "independently actionable under section 17200." <u>Farmers Ins. Exch. v. Superior Court</u>, 2 Cal. 4th 377, 383 (1992). Violation of almost any federal, state, or local law may serve as the basis for a[n] [unfair competition] claim." <u>Plascencia v. Lending 1st Mortg.</u>, 583 F. Supp. 2d 1090, 1098 (9th Cir. 2008) (citing <u>Saunders v. Superior Court</u>, 27 Cal. App. 4th 832, 838-39 (1994)). "'Unfair simply means any practice whose harm to the victim outweighs its benefits. Fraudulent . . . requires a showing [that] members of the public are likely to be deceived.'" <u>Lippitt</u>, 340 F.3d at

---

[8] Defendants also seek to dismiss plaintiffs' unfair business practices claim on the basis that the court lacks subject matter jurisdiction to hear the claim. Defendants contend that plaintiffs' federal claims (specifically, TILA and RESPA) are time barred, and thus the court should not grant supplemental jurisdiction to plaintiffs' unfair business practices state-law claim. As set forth above, however, plaintiffs' RESPA claim is not time barred, and thus the court has supplemental jurisdiction over plaintiffs' state-law claims.

1043 (quoting <u>Saunders</u>, 27 Cal. App. 4th at 839). A complaint
based on an unfair business practice may be predicated on a
single act; the statute does not require a pattern of unlawful
conduct. <u>United Farm Workers of Am., AFL-CIO v. Dutra Farms</u>, 83
Cal. App. 4th 1146, 1163 (2000).

Standing is a prerequisite for a private plaintiff to bring
suit under Section 17200, and is satisfied if the plaintiff
suffered an actual injury depriving him of money or property.
<u>Californians for Disability Rights v. Mervyn's</u>, LLC, 39 Cal. 4th
223, 233 (2006); <u>see</u> Cal. Bus. & Prof. Code § 17204 (actions for
relief pursuant to the Unfair Business Practices Act may be
brought by "a person who has suffered injury in fact and has lost
money or property as a result of the unfair competition.")

Plaintiffs' unfair business practices claim can be
predicated upon defendants' RESPA violation. Since § 17200
"'borrows' violations of other laws and treats" them as unlawful
business practices "independently actionable under section
17200," <u>Farmers</u>, 2 Cal. 4th at 383, defendants' alleged RESPA
violation can serve as a foundation for plaintiffs' Bus. & Prof.
Code § 17200 claim for relief. <u>See</u> <u>also</u> <u>Monaco v. Bear Stearns
Residential Mortg. Corp.</u>, 554 F. Supp. 2d 1034 (C.D. Cal. 2008)
(holding that plaintiff borrowers' unlawful business practices
claim based upon lender's alleged TILA violation was sufficient
to survive a motion to dismiss despite the court's ruling that
plaintiffs' TILA cause of action was time barred).

Further, plaintiffs have standing to bring their Section
17200 claim for relief because plaintiffs suffered an injury in
fact that deprived plaintiffs of money. Accepting plaintiffs'

27

allegations as true and reading the complaint liberally and as a whole, defendants fraudulently transferred plaintiffs' loans to Indymac.  Due to defendants' actions, plaintiffs were allegedly compelled to pay a higher interest rate on their loans, and were thus deprived of money.  In light of the court's conclusion that plaintiffs' have sufficiently asserted their RESPA claim and that plaintiffs' have suffered financial injury, plaintiffs' § 17200 claim is sufficient to withstand a motion to dismiss.

Accordingly, defendants' motion to dismiss plaintiffs' Tenth Claim for Relief is DENIED.

**F.    Eleventh Claim for Relief**

Plaintiffs' Eleventh Claim for Relief alleges breach of contract against defendants based on the allegation that defendants charged plaintiffs a higher finance charge than the figure disclosed in the Truth in Lending Disclosure ("TILD").  Further, plaintiffs allege that the loan agreements were unconscionable, such that the provisions of the agreements should not be enforced.  Defendants seek to dismiss plaintiffs' breach of contract claim for relief on the basis that plaintiffs do not sufficiently allege that defendants breached the terms of the loan agreements.[9]

"Under California law, the elements of a breach of contract claim are: (1) the existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) resulting damage to plaintiff."  <u>EPIS, Inc. v. Fidelity &</u>

---

[9]    Since defendants limit their motion to the breach of contract claim, the court does not address the sufficiency of plaintiffs' claim regarding unconscionability.

28

1  <u>Guaranty Life Ins. Co.</u>, 156 F. Supp. 2d 1116, 1124 (N.D. Cal.

2  2001) (citing <u>Reichert v. General Ins. Co.</u>, 68 Cal. 2d 822, 830

3  (1968)).

4      Plaintiffs have sufficiently alleged that defendants

5  breached the terms of the loan agreements.  Plaintiffs allege

6  that they entered into the loan agreements with defendants and

7  faithfully performed according to the terms of the agreements.

8  Further, plaintiffs allege that defendants breached the loan

9  agreements by charging a higher finance fee than that disclosed

10 in the TILD, and that plaintiffs suffered damages because they

11 were forced to pay a higher finance fee than they originally

12 contracted for.  Viewing the complaint liberally and giving

13 plaintiffs the benefit of every reasonable inference, plaintiffs

14 have sufficiently alleged that defendants breached the loan

15 agreements executed between the parties, and as such plaintiffs'

16 breach of contract claim is sufficient to survive a motion to

17 dismiss.

18      Accordingly, defendants' motion to dismiss plaintiffs'

19 Eleventh Claim for Relief is DENIED.

20      **G.   Thirteenth Claim for Relief**

21      In their Thirteenth Claim for Relief, plaintiffs allege that

22 defendants made false and misleading statements to plaintiffs

23 that were intended to induce plaintiffs to enter into the loan

24 agreements in violation of Cal. Bus. & Prof. Code § 17500.

25 Defendants seek to dismiss plaintiffs' claim on the basis that

26 defendants did not make false or misleading statements to

27 plaintiffs.

28 /////

California Business and Professions Code § 17500 provides that it is unlawful for any company or employee thereof to make or disseminate any statement concerning real or personal property or professional services, which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

"To state a cause of action under consumer protection statutes designed to protect the public from misleading or deceptive advertising, the plaintiff must demonstrate that 'members of the public are likely to be deceived.'" <u>Wayne v. Staples, Inc.</u>, 135 Cal. App. 4th 466, 484 (2006) (citations omitted). "A claim for false or misleading advertising and unfair business practices 'must be evaluated from the vantage of a reasonable consumer.'" <u>Cairns v. Franklin Mint Co.</u>, 24 F. Supp. 2d 1013, 1037 (C.D. Cal. 1998) (citation omitted). "California false advertising statutes encompass not just false statements but those statements 'which may be accurate on some level, but will nonetheless tend to mislead or deceive.'" <u>Arizona Cartridge Remanufacturers Ass'n, Inc. v. Lexmark Intern, Inc.</u>, 421 F.3d 981, 985 (9th Cir. 2005) (quoting <u>Day v. AT&T Corp.</u>, 63 Cal. App. 4th 325, 332 (1998)). "'A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under [Section 17500].'" <u>Id.</u> at 332-33. "Whether consumers have been or will be misled is a factual question that cannot be resolved on a motion to dismiss. <u>Cairns</u>, 24 F. Supp. 2d at 1037.

/////

30

Here, plaintiffs assert that defendants' explanation of the adjustable rate mortgage offered to plaintiffs was intentionally misleading, deceptive, and ambiguous. Whether consumers have been or will be misled is a factual question that cannot be resolved on a motion to dismiss. Therefore, plaintiffs' Thirteenth Claim for Relief is sufficient to withstand a motion to dismiss.

Accordingly, defendants' motion to dismiss plaintiffs' Thirteenth Claim for Relief is DENIED.

## II. Motion to Dismiss for Failure to Join a Necessary Party

Defendants move to dismiss pursuant to Rule 12(b)(7) in that an indispensable party – Dan Brown Mortgage ("DBM") – has not been joined in accordance with Rule 19. Plaintiffs allege that defendants acted as their mortgage brokers in originating the loans, and that defendants received an undisclosed YSP in the form of an illegal kickback or fee from Indymac. While defendants contend that DBM received a YSP for originating the loans and thus must be joined as an indispensable party, the current matter is not concerned with the YSP received by DBM, but rather the alleged YSP received by defendants. If plaintiffs' allegations concerned the YSP received by DBM, then it would be necessary to join DBM as a party; however, since the YSP received by DBM is not at issue, DBM does not have a legally protected interest in the current suit and complete relief can indeed by accorded without joining DBM.

Accordingly, defendants' motion to dismiss plaintiffs' claims pursuant to Rule 12(b)(7) is DENIED.

/////

### III. Motion For A More Definite Statement

Defendants move for a more definite statement on the basis that a number of plaintiffs' allegations are "vague and ambiguous." Defendants' motion is without merit. Plaintiffs' complaint is not so vague and ambiguous that defendants cannot frame a responsive pleading. Indeed, defendants' thirty-page Motion is evidence that plaintiffs have pled their allegations with sufficient particularity to apprise defendants of the claims against them. Accordingly defendants' motion for a more definite statement is DENIED.

### IV. Motion to Strike

Defendants move to strike numerous portions of plaintiffs' complaint on the basis that plaintiffs' allegations are generally "immaterial." In light of the limited importance of pleadings in federal practice, plaintiffs' complaint is largely sufficient to withstand defendants' motion to strike. A motion to strike should not be granted unless it is absolutely clear that the matter to be stricken could have no possible bearing on the litigation. Lilley, 936 F. Supp. at 713. It is not absolutely clear that plaintiffs' "immaterial" allegations can have no possible bearing on the litigation. Accordingly, defendants' motion to strike is DENIED.

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss plaintiffs' Fifth, Sixth, Seventh, Tenth, Eleventh, and Thirteenth Claims for Relief is DENIED. However, defendants' motion to dismiss plaintiffs' Second and Twelfth Claims for

/////

Relief is GRANTED with leave to amend.  Defendants' motion for a
more definite statement and motion to strike are DENIED.

   IT IS SO ORDERED.

DATED: March 16, 2009

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE